Statement of Facts.

## T. F. QUIGLEY v. DEL. & H. CANAL CO.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 15, 1891—Decided May 18, 1891.

[To be reported.]

1. When witnesses, in an action for negligence, testify that they did not hear the whistle or bell of a locomotive sounded until it appeared at a certain point, that they were giving particular attention, were listening for such signals, and would have heard them if given, their testimony is more than merely negative, and therefore cannot be disregarded.

2. The purpose of giving warning before a railroad train or locomotive comes to a crossing, is not only to prevent persons from driving on the track in front of it, but also to give notice to travelers upon the highway, so that they may not approach within dangerous proximity to the train : Per RICE, P. J., approved by Supreme Court.

3. One guilty of an act of negligence, will be held to have foreseen and to be responsible for whatever consequences resulted from his negligence, without the intervention of some other independent agency disconnected from the primary fault and self-operating; although, in advance, the actual result may have seemed improbable : Bunting v. Hogsett, 139 Pa. 363.

(a) The neglect of a railroad company's employees to give warning of the approach of an engine to a crossing, caused the driver of a team to go upon the track, where he found himself in such a position of seeming peril that he justifiably dropped the lines and leaped from the wagon, leaving the horses to shift for themselves :

4. An injury to one of the horses, resulting, as supposed, from the entanglement of the lines in the wheel of the wagon, while the horses were running away in fright caused by the approach of the engine, was the natural, primary and proximate result of the negligent act of the engineer, no intervening independent cause being shown to exist.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 397 January Term 1891, Sup. Ct. ; court below, No. 188 October Term 1884, C. P.

On June 24, 1884, T. F. Quigley brought case against " The President and Managers and Company of the Delaware & Hudson Canal Company," to recover for damages alleged to

have been occasioned by the negligence of the defendant's employees. The defendant's plea was not guilty.

At the second trial, on January 19, 1891, the following facts were shown:

On a morning in the early part of May, 1884, a team of three horses, belonging to the plaintiff, was passing through the village of Miners Mills, upon a highway known as Market street and also as the Mocktown Road, drawing a wagon upon which had been loaded about two tons of building stone. The horses were in charge of a driver named William Muench, in the plaintiff's employ. Market street was intersected by the track of the Central Railroad of New Jersey used by the defendant company. When the lead horse was about fifty feet away from the railroad crossing, Muench stopped to wait until a train of freight cars upon the crossing would pass, and while he was waiting, the plaintiff came along the street on his way to take a train. The freight train having passed, the driver looked from the top of his load and listened for any other approaching trains, before starting his team again. The testimony for the plaintiff tended to show that the place at which the wagon was standing was the best point of observation for that purpose, and that, close to the railroad, the view along the track was very limited in consequence of the track being laid in a cut and on a curve. Testimony for the defendant tended to show that, at a point a little nearer to the track, an unobstructed view could have been had.

Neither seeing nor hearing anything to indicate danger, the driver started to cross the track, but after the horses had stepped upon the crossing he saw the engine of the defendant company approaching, in charge of its employees. The testimony for the plaintiff tended to show that the engine was running at the rate of over fifteen miles per hour, while witnesses for the defendant testified that its rate of speed was not more than four or five miles an hour. It was sufficiently under control, however, to be stopped about twenty feet short of the crossing. The plaintiff and Muench both testified that they heard no signal, either by bell or whistle, of the approach of the engine, although they were looking out for a train and listening for such signals. Witnesses for the defendant testified that the whistle was sounded both at the whistling post, about one

Charge of Court below.

thousand feet above the crossing, and also at a telegraph pole, from three hundred to four hundred feet away from it.

When the engine came in sight, the horses became frightened, and jumped forward, and the driver, believing his life in danger, dropped his lines and sprang from the wagon. The horses then ran across the track and some distance beyond it, when in some manner the lead horse was knocked down by the wheel horses and run over, his leg being broken so that he had to be killed. The plaintiff's witnesses testified that they thought it likely that the lines got caught in the wheel of the wagon and pulled the leader around, thus causing him to be knocked down, but they were unable to see exactly how the accident occurred. The driver, Muench, testified, on cross-examination, that he thought he might have controlled the team, if he had remained on the wagon, and "if the lines would have held."

The testimony being closed, the court, RICE, P. J., charged the jury in part as follows:

The duty required of the defendant company is to exercise due care. What is due care is to be measured by the circumstances of the particular case. It is not the extreme care of the most prudent man, which is required of the defendant; it is the care of an ordinarily prudent man. But this kind of care, ordinary care, may vary with the circumstances; and those are to be judged of by the jury in determining whether or not the defendant was guilty of negligence.

First, with regard to the rate of speed at which this engine was running. We say to you, as it appears from the testimony, that the engineer had the locomotive under control, so that he was able to stop at least twenty feet above the crossing. This was not a negligent rate of speed, as applied to the circumstances of this case.

It is suggested, further, that even though a warning had been given by the engineer at the bridge, and at the third telegraph pole, yet, if at a point four hundred feet above the crossing he saw the plaintiff's lead horse upon the track, it was his duty to stop sooner than he did, and that, by reason of his failure to do so, he is guilty of negligence, and his employer is responsible for his negligence. We are unable to agree with the counsel upon that proposition. We are of opin-

Charge of Court below.

ion that the engineer owed to the plaintiff and his driver the
duty of having his engine under control, so as to be able to
stop before reaching the crossing in case of necessity; but we
are not of opinion that it was his duty to run at such a rate of
speed as to stop at a further point of the track, provided the
warnings which are essential had been given.

Then, in the third place, was the whistle blown and the bell
rung? It is contended upon the part of the defendant that the
whistle was blown at the bridge one thousand feet above the
crossing, and again at a point about three hundred feet from
the crossing. Now, upon this question of fact there is a dis-
crepancy of testimony. I do not say that there is a conflict.
There may, or there may not be, just as you look at the testi-
mony. There may be no actual conflict of testimony, upon
the theory that one heard what the other did not hear, and,
therefore, no real difference between the witnesses. But, upon
the part of the plaintiff, it is alleged that the whistle was not
blown and the bell was not rung, because it was not heard by
him nor by his driver. Now, in determining this question of
fact, you are to take into consideration all of the circumstances.
While this testimony is negative in its character, and therefore
intrinsically may not have the same weight as positive testi-
mony, yet if from the circumstances of the case, these witnesses
had occasion to listen for the bell or the blowing of the whistle,
and did not hear it, then it would come very near to the grade
of positive testimony. . . . . .

Now, with regard to the action of the plaintiff's driver. It
has been the rule of law in this state for many years, and is
well settled beyond any controversy, so far as our state is con-
cerned, that it is the duty of a driver approaching a railroad
crossing, to stop, to look in both directions, and to listen. This
is an imperative duty, and the failure to perform that duty is
negligence. And it is his duty to stop at a proper place; not
at some remote point from the track where it would do no
good to stop; not at some point where he could not see in
either direction, provided there was some other point where he
could see in both directions or in either direction; but he must
stop at a proper place and look for approaching trains, and lis-
ten. Now, did the driver stop at a proper place? Did he look?
Did he listen? And then, having started and driven upon the

Charge of Court below.

track, did he exercise the care of a prudent man, in leaving the wagon when he saw the engine? He has testified that he thinks he could have held the team if he had remained on the wagon, but his reason for leaving the wagon was that he felt himself to be in great peril. Now, then, it is for you to decide whether he was prudent in jumping from the wagon at that time, or whether or not an ordinarily prudent man would have remained upon the wagon under all of the circumstances, with an engine approaching with that nearness to him that this engine was, and his horses acting as he says they did. Of course, this is peculiarly a question for the jury, and not for the court.

[But it is argued upon the part of the defence, that even if the whistle was not blown and the bell was not rung, yet the proximate cause of the accident to the plaintiff's team, was their being abandoned by the driver, who testifies that he believes he could have controlled them if he had remained on the wagon. We think that this is too extreme a view of the law. The purpose of giving a warning before a railroad train comes to a crossing, is not only to prevent drivers from driving on the track in front of the approaching engine, but also to give notice to persons traveling upon the highway, so that they shall not approach within dangerous proximity to the train that is approaching; and if this was a duty upon the part of the defendant company, and if this duty was neglected, and this caused the plaintiff's driver to approach so near the engine that was approaching that his horse took fright, or it made it necessary for him in the exercise of ordinary prudence to jump from the wagon and abandon the horses, then we are of opinion that this negligence is not so remote but that the defendant company may be held liable therefor.] [1]

The defendant's counsel have requested us to charge you as follows:

2. If the plaintiff and his driver were not negligent, then it is a case where neither party to this suit was guilty of negligence, and the injury complained of was the result of pure accident, for which the plaintiff cannot recover.

Answer: We decline to charge as requested in that point.[3]

3. The proximate cause of the injury to the plaintiff's team was their being abandoned by the driver, who testifies he believes he could have controlled them if he had remained on the wagon.

Arguments.

Answer: We decline to charge as requested in that point.[2]

4. The engine having, as shown by the testimony of both plaintiff and defendant, stopped before it reached the crossing, thus proving conclusively that the engine was under control, the rate of speed of the engine is not in question in this case.

Answer: We answer that point in the affirmative. The only bearing which the evidence as to the rate of speed has upon the case, in our judgment, is upon the action of the driver in jumping from his wagon. It may have some bearing upon that question, but it is not evidence, in our judgment, of negligence upon the part of the defendant, because, as stated in the point, the engine was under control.[5]

5. It appearing from the evidence that the railroad upon which the defendant's engine was running, was owned and operated by the Central Railroad of New Jersey, no duty devolved upon the defendant company to maintain gates or watchmen at the crossing in question.

Answer: This is affirmed.

6. Under the whole evidence in the case, your verdict should be for the defendant.

Answer: This point is negatived.[4]

7. If the court should decline to so charge, then it is requested to charge: That if, as a matter of fact, the whistle was blown at or near the whistle post, being about a thousand feet distant from the crossing, and again within three hundred feet from the crossing, the defendant fulfilled its whole duty, and is not chargeable with negligence, and your verdict must be for the defendant.

Answer: This is affirmed.

—The jury returned a verdict in faver of the plaintiff for $250. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1. The part of the charge embraced in [ ][1]

2–5. The answers to defendant's points.[2 to 5]

*Mr. George R. Bedford* (with him *Mr. Andrew H. McClintock*), for the appellant:

1. The proximate cause of the accident was the desertion of his team by the driver. He testified himself that he could

have held the horses if he had remained on the wagon. His act, in throwing down the reins and letting his horses shift for themselves, was the cause and the only cause of the injury. Therefore, it was the duty of the court below to affirm the defendant's third point: West Mahanoy Tp. v. Watson, 116 Pa. 344; Pass. Ry. Co. v. Trich, 117 Pa. 390; Hoag v. Railroad Co., 85 Pa. 293; Penna. R. Co. v. Kerr, 62 Pa. 353; Haverly v. Railroad Co., 135 Pa. 50. It is not too much to say that the engineer could not foresee that the driver would abandon his team, nor the further contingency of the entanglement of the lines in the wheel, without the happening of which it might well be that the runaway would have worked no harm.

2. The court negatived our second point, upon the theory that the purpose of giving warning of the approach of a train to a crossing is to give notice to persons traveling on the highway, "so that they shall not approach within dangerous proximity of the train," as well as to avoid collisions. The only danger to be avoided, aside from collision, was fright to horses. But it is clear upon the authorities that a railroad company is not responsible for fright occasioned to horses by noises incident to the use of steam engines. If the engine were standing still, or if the engineer had no purpose of crossing the highway, it would not have been his duty to give any warning; and the absence of a warning to a traveler would not have rendered the defendant liable for an accident caused by fright of a horse: Drayton v. Railroad Co., 10 W. N. 55; Favor v. Railroad Co., 114 Mass. 350; Miller v. Railroad Co., 11 W. N. 369.

3. As the plaintiff himself was present with his driver, it was his duty to go ahead of the team and look for cars. This was a duty easily performed in the present case, and we submit that both the plaintiff and his driver were guilty of contributory negligence: Penna. R. Co. v. Beale, 73 Pa. 504. The defendant was entitled to have a distinct answer to its fourth point, but the answer, while apparently an affirmance was in reality a denial. It was contradictory and likely to confuse the jury; for, if the rate of speed of the engine was not in question in the case, then it could not have any bearing upon the action of the driver; while, if it did have some bearing upon the action of the driver in jumping from his wagon, it could not be said that it was not a question in the case.

Such an answer is error: Citizens Ry. Co. v. Ketcham, 122 Pa. 228.

*Mr. John Lynch*, for the appellee:

The circumstances warranted the driver in abandoning the team. If, having seen the engine approaching at the rate of fifteen to twenty miles an hour, and, warned of his danger, he had remained upon the wagon and been struck by the engine, the company could have successfully defended an action brought by him, upon the ground that he had failed to heed the warning: Kilpatrick v. Railroad Co., 140 Pa. 502. Even if he could have managed the team had he remained on the wagon, it was not his duty to imperil his life for the sake of the experiment. The entanglement of the lines, and the consequent injury to the horses, were the natural and probable result of their fright and running away without a driver: Phila. etc. R. Co. v. Brannen, 17 W. N. 227. And the failure of the engineer to give a signal of his approach, was negligence per se: Phila. etc. R. Co. v. Stinger, 78 Pa. 219; Penna. R. Co. v. Horst, 110 Pa. 231.

OPINION, MR. JUSTICE CLARK:

In the general charge, the court instructed the jury that, inasmuch as it clearly appeared in the testimony the engineer had the locomotive in such control that he was able to stop at least twenty feet above the crossing, it could not be said, under the circumstances of this case, that he was running at a negligent rate of speed; and that, if the usual warnings had been given, the engineer would be taken to have performed his full duty in stopping the engine before he arrived at the crossing.

But the jury found that no warning had been given; that the whistle was not blown, nor the bell rung; and, whilst we think the weight of the testimony was perhaps to a different effect, the court would not have been justified in withdrawing that question from the consideration of the jury. The testimony on part of the defendant, it is true, was positive. The engineer and the fireman, and also Hopkins, testified distinctly to the fact that the whistle was blown, not only at the bridge, one thousand feet, but at the third telegraph pole, four hundred

feet above the crossing.   The testimony on part of the plaintiff, however, was not of a purely negative character.   Quigley and Muench testify that they did not hear either the whistle or the bell until about the time the lead horse was on the crossing. They say further, however, that, as the passenger train was about due, they were giving particular attention, were listening for the whistle, and that if. it had been blown they would have heard it.   Under these circumstances, their testimony is more than merely negative, and therefore could not be disregarded.   The jury has found the fact, and that this failure to give proper warning, as the engine approached the crossing, was an act of negligence on the part of the engineer which is to be imputed to the company.

The jury has also found, upon competent testimony and under proper instructions, that the driver of the wagon, before attempting to cross the railroad track, stopped at a proper place, and looked and listened for the approach of a train, and did not hear the engine; and that having started and driven upon the track, when he saw the engine approaching as it did, he acted as an ordinarily prudent man would have acted, in view of all the circumstances, in jumping off the wagon to avoid the peril which seemed imminent, and in abandoning the horses and wagon to the probable consequences.   The verdict of the jury involves the fact that the driver was not guilty of any negligence which contributed to the injury.   Assuming this to be so, what was the proximate cause of the injury? The purpose of giving a warning before a railroad train or locomotive engine comes to a crossing, as the learned judge very properly said in the general charge, is not only to prevent persons from driving on the track in front of the approaching train or engine, but also to give notice to travelers upon the highway, so that they may not approach within dangerous proximity to the train.   The alleged neglect of this duty caused the driver of this wagon to go upon the track, and into the peril to which he was there seemingly exposed.   The dropping of the lines and the leap from the wagon, according to the finding of the jury, were such acts as an ordinarily prudent person would have done to extricate himself from the threatened danger; and they may therefore be said to have been necessitated by the negligent conduct of the company.   It was the fright

of the horses, and their abandonment by the driver, that caused the injury; but these causes were produced by the negligence of the defendant, who, without warning, ran the engine into such dangerous proximity to the wagon as to produce this fright of the horses, and to oblige the defendant, who felt that he was in peril, to jump from the wagon and let the horses go without control.

It might not, perhaps, have been foreseen exactly how, or to what extent, injury would result; but the engineer, as we said in Bunting v. Hogsett, 139 Pa. 363, would be held to have foreseen whatever consequences might ensue from his negligence without the intervention of some other independent agency; and both his employer and himself would be held for what might in the nature of things occur in consequence of that negligence, although in advance the actual result might have seemed improbable. It is not certainly known that the lines were caught in the wheel. The witnesses say that it is "likely" they did; we do know that they were liable to be caught in the wheels, and this would account for the lead horse having been turned around as he was. If the engineer, by his negligence, compelled the driver to abandon the horses, he would be presumed to have foreseen what was reasonably liable to occur. There was not any intervening cause, disconnected with the primary fault, and self-operating, shown to exist in this case, to affect the question of the defendant's liability. The negligent act of the engineer was the natural, primary, and proximate cause of the injury.

The judgment is affirmed.