# Annie Haverstick v. Pennsylvania Railroad Company, Appellant.

| 171 | 101 |
|-----|-----|
| 180 | 507 |
| 171 | 101 |
| 202 | [1]508 |
| 171 | 101 |
| f 27 SC | [3]255 |
| 171 | 101 |
| 217 | [1]109 |

*Negligence—Railroads—Crossing—Evidence—Presumption.*

The presumption that the train men of a railroad company performed their duty when a train approached a grade crossing may be overcome by the testimony of a single witness for the plaintiff that no whistle was sounded or bell rung, if the defendant offers no evidence on the subject.

*Negligence—Contributory negligence—Stop, look and listen—Presumption.*

The presumption that a man stopped, looked and listened before he went upon a railroad track at a crossing stands unrebutted, where the evidence

shows that a standing freight train so completely shut off the view of the track that the approaching train which struck and killed the deceased was not visible a second before it struck him.

*Witness—Elements of value of testimony—Question for jury.*

The value of a witness's testimony to the fact that a bell was not rung nor whistle sounded on an engine approaching a grade crossing, depends upon his truthfulness, his acuteness of hearing, his opportunity for hearing and his recollection; all this is for the jury in determining the fact.

*Witness — Presumption — Negative testimony — Affirmative testimony — Question for jury.*

In an action against a railroad company for damages for a death caused at a railroad crossing, where one witness who was in a situation to hear the warning, if any had been given, testifies that none was given, and the presumption that the deceased stopped, looked and listened was unshaken by any testimony in the case, and affirmative testimony that warning had been given, if such was the fact, could probably have been produced, the case cannot be withheld from the jury.

Argued April 9, 1895. Appeal, No. 201, Jan. T., 1895, by defendant, from judgment of C. P. Phila. Co., Sept. T., 1892, No. 300, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Trespass for the death of plaintiff's husband. Before JENKINS, J.

The facts appear by the opinion of the Supreme Court.

Defendant's points, among others, were as follows:

2. If the negligence of the defendant is alleged to consist in the failure to have the bell of the locomotive which is said to have struck the plaintiff's husband rung as the train was approaching Engleside station, then such allegation is not sufficiently supported by any evidence in the cause, and the jury are not warranted in finding any such negligence. *Answer:* Refused. [2]

3. There is no evidence in the cause of any negligence on the part of the defendant, and the verdict of the jury should be for it. *Answer:* Refused. [3]

5. There is a presumption that the engineer and fireman of the locomotive which struck the plaintiff's husband did their duty in ringing the bell as the locomotive approached the station; and the defendant is entitled to the benefit of this presumption unless and until it is rebutted by positive testi-

mony that the bell was not rung. *Answer :* I affirm that point. The evidence of the boy Reuben Allen, if you believe his evidence, you may find from that that the bell was not rung, and that there was no notice given of the approach of the train. [4]

6. Under all the evidence in the cause the verdict should be for the defendant. *Answer :* Refused. [5]

Verdict and judgment for plaintiff for $15,000. Defendant appealed.

*Errors assigned* were, (1) in not withdrawing the case from the consideration of the jury, and either entering a nonsuit; or directing the jury to find for the defendant; (2–5) above instructions, quoting them.

*Geo. Tucker Bispham,* for appellant.—It is submitted that none of the authorities go so far as to justify a recovery against a company upon such a mere conjecture as existed in the present case : Hall's Case, 61 Pa. 361; Longenecker's Case, 105 Pa. 328.

If it was safe for Haverstick to walk in front of the standing locomotive (which it is admitted it was) it was his duty as he passed it to look to his right.   If he had done so he must have seen the approaching train : Smith v. P. & R. R. R., 160 Pa. 117; Lees v. R. R., 154 Pa. 46.

The law presumes that the employees of the company defendant did their duty.  That presumption stands until it is contradicted by some positive testimony.  It is submitted that there is really no positive evidence in this case to overthrow the presumption spoken of.  To say that a violation of duty is to be fastened upon the servant of the railroad company simply because a little boy between fourteen and fifteen years of age, who was in a perfectly safe place, who was not expecting to cross the railroad, but who was on his way in another direction, and who admits that he was paying no attention to railroad trains, testifies that no bell was rung, would be to go further than any decided cases have heretofore warranted : Longenecker v. R. R., 105 Pa. 328; Urias v. R. R., 152 Pa. 328; Kelly v. St. Paul Ry. Co., 6 Am. & Eng. Ry. 95 ; Culhane v. N. Y. Cent. & H. R. R., 60 N. Y. 137.

*Alfred Moore, Arthur Moore* with him, for appellee.—It is the duty of those in charge of a train when approaching a public crossing to give notice by whistling, ringing the bell, or other device sufficient to give warning that they are approaching, and in sufficient time to enable those coming to the crossing to stop in safety : Ry. Co. v. Dunn, 56 Pa. 280.

Where a person is killed at a railroad crossing, and there is no evidence whether he stopped, looked and listened or not, the presumption of law is that he did, until rebutted : Schum v. Penna. R. R., 107 Pa. 8; Reading R. R. v. Ritchie, 102 Pa. 425; Lehigh Valley R. R. v. Hall, 61 Pa. 361; Penna. R. R. v. Weber, 76 Pa. 157; Smith v. P. & R. R. R., 160 Pa. 117; Lees v. R. R., 154 Pa. 46.

OPINION BY MR. JUSTICE DEAN, October 7, 1895 :

The plaintiff's husband was struck and killed by a locomotive of defendant at Engleside Station, within the limits of Philadelphia, on April 1, 1892. Engleside is a flag station. There are at this point five railroad tracks ; the shed or station house of defendant is on the north side of these tracks ; between the rails are laid planks, over which passengers from the south side of the tracks walk to reach the station. On this day, a long freight train was standing on the railroad, headed west, the locomotive being about nine feet from the crossing. The train which killed deceased was the Trenton Accommodation, bound west on the track next that on which stood the freight train. The deceased was about forty-five years of age, a clerk in the gas office; there was no evidence of any impairment of his senses of sight or hearing. He lived with his family on the south side of the railroad. On the day of the accident he came home to dinner about one o'clock in the afternoon ; immediately after dinner he said to his daughter he was going to O'Brien's coal yard to pay a bill, and then would take a train and go into the city; the coal yard is on the same side of the railroad as his dwelling, and quite near the crossing to the station ; the direct and most convenient way from the coal yard to the station to take a train into the city was over the plank crossing ; in about half an hour after leaving home he was struck on this crossing by the train. If he was in the act of walking over the plank crossing to the station when he met his

death, the train which killed him could not have been seen, be-cause his view westward along the tracks was obstructed by the standing freight train; one step from in front of the standing locomotive placed him in front of the moving one. The train was running at a speed of about twenty miles an hour, and did not stop at Engleside.

The plaintiff sued for damages, alleging negligence of de-fendant, in that it had given no warning of approach to the crossing.

The court below submitted three questions to the jury: 1. Did the evidence show no warning had been given? 2. If it did, then had plaintiff made out, under the circumstances, a case clear of contributory negligence on part of her hus-band? If they found both questions in favor of plaintiff, then: 3. What damage had she sustained? The jury found for plain-tiff in sum of $15,000, and from the judgment entered on the verdict defendant appeals, assigning five errors, which may all be properly noticed in passing upon the fifth, which is that the court erred in not instructing the jury that under all the evi-dence their verdict must be for defendant.

The rule as to the respective duties of the railroad company and the public at a grade crossing was stated in Railroad Co. v. Dunn, 56 Pa. 280. It is the duty of those in charge of a train, when approaching a public crossing, to give notice by whistling, ringing the bell, or other device sufficient to warn of their approach, and if they fail to do so they are negligent. When a traveler approaches the public crossing it is his duty to stop, look and listen; if he fail to do so it is negligence and he cannot recover for injuries, although defendant may have been negligent. This rule has been stated over and over since, and there has been no departure from it.

The presumption is, the employees of defendant performed their duty when the train approached the crossing; gave warn-ing by sounding a whistle or ringing a bell; the presumption also is, deceased stopped, looked and listened before going upon the crossing. The presumption as to either may be re-butted by competent evidence.

The plaintiff offered evidence tending to rebut the presump-tion that the train hands had performed their duty. Reuben Allen, a boy seventeen years of age, testified that he and a com-

panion, about ten minutes before the accident, had crossed the railroad on their way to the park, and sat down to rest on a bench in the waiting shed; that while sitting there the train struck Haverstick and hurled his body past them against the side of the building; that no whistle was sounded, bell rung, or other notice of approach given. There is nothing in the evidence of this boy, as presented on the paper-books, indicating any lack of either intelligence or truthfulness; he was subjected to a very thorough cross-examination which in no particular detracted from the force of his testimony in chief. This, it is true, was but negative evidence, but how is the presumption of an affirmative rebutted except by negative evidence? If, in, the absence of any testimony on the subject, it be presumed an engineer did blow a whistle, it can only be rebutted by proving by witnesses who had opportunity to hear that they did not hear it. From observation and experience as to the ordinary operations of the senses, we conclude that positive testimony is more reliable than negative, but that is the extent of the induction; no writer on evidence has ever intimated that negative evidence is valueless when opposed to a presumption founded on the existence of motive to exercise care according to the circumstances. The value of this boy's testimony depended upon his truthfulness, his acuteness of hearing, his opportunity for hearing, and his recollection; all this was for the jury in determining the fact. The learned judge of the court below, having seen and heard the witness, in the light of all the testimony, refused to disturb the verdict; he was bound to set it aside, if against the manifest weight of the testimony.

Not only was it the exclusive province of the jury to determine the value of this negative evidence, in view of the age, intelligence and candor of the witness, but they had the right to consider the entire absence of any positive testimony contradicting his statement, as tending to corroborate him. There were upon the locomotive approaching the crossing an engineer and fireman who knew their duty, and knew whether they had performed it. Within ten seconds after the bell ought to have been rung, or the whistle sounded, the train ran over a man on a crossing; he ought not to have been there, if they gave warning; certainly, it instantly occurred to them to mentally inquire whether his death resulted from their negligence

in not giving warning, or in his from not heeding it. Besides the train hands, there were at the station other employees of the company whose duty it probably was to listen for sounds of approaching trains. Not a witness is called to prove warning was given; nothing is offered to explain their absence because of death, illness or removal; so far as appeared at the trial, all could have been produced to testify affirmatively to the fact of warning, if it had been given. "It is certainly a maxim, that all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted." Note 2, sec. 1266, Wharton's Law of Evidence, vol. 2, and the cases there cited. If a single witness, who had been in a situation to hear this warning, had testified affirmatively it was given, the authorities on the comparative value of affirmative and negative testimony, cited by the learned counsel for appellant, would have been to the point. The strongest of those relied on by him is Culhane v. Railroad Co., 60 N. Y. 137. It holds thus:

"As against positive affirmative evidence by credible witnesses to the ringing of a bell or the sounding of a whistle, there must be something more than the testimony of one or more witnesses that they did not hear it to authorize the submission of the question to the jury. It must appear that they were looking, watching, and listening for it; that their attention was directed to the fact, so that the evidence will tend to some extent to prove the negative. A mere 'I did not hear' is entitled to no weight in the presence of affirmative evidence that the signal was given, and does not create a conflict of evidence justifying a submission of the question to the jury as one of fact.'

This language is somewhat stronger than is established by the weight of authority; but giving it all the force its emphasis warrants, it is a complete justification of the court below in submitting this evidence to the jury. Not only was there not a spark of affirmative evidence contradictory of the negative, but, if capable of contradiction, there were witnesses within reach who could have contradicted it; they were not called, and there was no contradiction. What is the obvious inference? That the negative was the truth.

As to the alleged contributory negligence of Haverstick in

going upon the crossing, the evidence was that the standing freight train completely shut off his view of the approaching train. If he could have seen it before he put his foot upon the track, he was bound to wait until it passed; but all the evidence tended to show it was not visible a second before it struck him. Therefore the presumption in his favor stands unrebutted; it will be inferred that a man of intelligence took ordinary care for self preservation; that he stopped, looked, but could see nothing because of the obstructing train; listened, but heard no warning, because none was given. Every possible inference that could be drawn against him from the evidence was pointedly called to the attention of the jury in this instruction by the court below: "If you find that William Haverstick was at all negligent in approaching the tracks, so that he was run over by reason of his concurring negligence, your verdict ought to be for the defendant."

It is seldom, in a case of this character, the evidence is so meager; especially is this noticeable here because so many persons are not called who must have had knowledge at the time of material facts bearing on the one side or the other of the issue. But there was no such meagerness of evidence as warranted the court in saying there was nothing on which to rest a verdict for plaintiff, as so earnestly argued by the learned counsel for appellant.

When the evidence closed, how then stood the case? 1. One witness who was in a situation to hear a warning, if one had been given, testified none was given. 2. The presumption that deceased, whose life depended on his so doing, had stopped, looked and listened, was unshaken by any testimony. 3. Affirmative testimony that warning had been given, if such were the fact, could probably have been produced, but no witness was called.

How could the court withhold such a case from the jury without committing manifest error?

The judgment is affirmed.

October 24, 1895, reargument refused.