# Kubrak, Appellant, *v.* Pennsylvania Railroad Company.

*Negligence—Railroad companies—Crossing—Death—Evidence—Sufficiency—Judgment for defendant n. o. v.*

Where, in an action of trespass to recover damages for the death of plaintiff's husband, who was killed by a locomotive while endeavoring to cross railroad tracks at a private crossing, there was uncontradicted testimony that warnings were given by two distinct whistles blown before the train reached the crossing and that the bell had been continuously rung for fifteen hundred feet, where the only witness testifying for plaintiff, although stating that he did not hear any bell also admitted that he was busily engaged at work on a flower bed at the time of the accident, the evidence of such witness was merely negative in character and was not sufficient to overcome the testimony of defendant's witnesses, and the entry of judgment for defendant n. o. v. was proper.

Argued Oct. 9, 1916. Appeal, No. 17, Oct. T., 1916, by plaintiff, from judgment of C. P. Allegheny Co., Jan. T., 1914, No. 920, for defendant n. o. v., in case of Mary Kubrak, Widow of Vladislaw Kubrak, v. Pennsylvania Railroad Company. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband.

The facts appear in the following opinion of DAVIS, J., sur defendant's motion for a new trial and for judgment n. o. v.:

The husband of plaintiff was killed on the 14th day of May, 1913, by a freight train of the defendant company at a private crossing in the Borough of Tarentum, in the County of Allegheny.

The statement of plaintiff alleges that the death of her husband was caused by the negligence of the defendant company in running said freight train at a high and dangerous rate of speed, and in not giving any warning

òf its approach to the said private crossing. This allegation of negligence on the part of plaintiff is based upon the evidence of a single witness, Mike Abel. He testified in reference to the speed of the train (at page 11) as follows: "Q.—Was the train that killed Kubrak running slow or fast? A.—Fast. Q.—How fast; can you give us an idea? A.—Just as it usually runs, good and fast."

This witness testified as to the warnings that were given (at page 10) as follows: "Q.—Did the train that killed Kubrak blow the whistle at that point? A.—No. Q.—Did it ring the bell? A.—No, I didn't hear any. Q.—What would you say, whether or not the bell was rung? . A.—When I didn't hear it I couldn't say."

On cross-examination (at page 20), the same witness testified: "Q.—You don't know whether the whistle was blown or not, do you? A.—No."

This question on cross-examination does not contradict his testimony in chief, but merely explains or qualifies his testimony, making it purely negative testimony.

The defendant has filed motions both for a new trial and for judgment n. o. v., and on argument of the case in court in banc has only pressed the motion for judgment n. o. v. The question in the mind of the court, on review of the testimony of plaintiff, is whether a new trial should be granted or judgment be entered in favor of the defendant n. o. v. Leaving out the question for the present whether the testimony of the plaintiff should be considered as positive or negative, the witnesses on the part of the defendant, both in relation to the speed of the train and the warnings given, exclude any negligence upon the part of the defendant, and stands uncontradicted. This conclusion arises from the nature of the question to the witness Abel, viz: "Did the train that killed Kubrak blow the whistle at that point?" The witness's testimony, examination and attention prior to this question had been confined to what occurred at the crossing, and his answer would be true that no whistle was blown at or near the crossing. This lack of clearness in

the question might lead us to grant a new trial in this case if it were not for the further testimony of this witness that would indicate his entire testimony must be considered as negative.

The witness was working at some distance and within sight of the crossing at his occupation as gardener and stated as follows: "Q.—What were you doing at the time? A.—Fixing a bed of flowers." And his further testimony shows that his attention was merely attracted to the deceased running to the crossing and stopping while the shifting train passed over the crossing, and he further testified (page 18): "Q.—When did you first notice this freight train coming which killed Kubrak? A.—When it caught him. Q.—Did you see it at all before it hit him? A.—I didn't."

This testimony rebuts any inference that his attention was drawn to the fact whether warnings either by the whistle or bell were given by the approaching train. He was not in a position of a witness who was waiting at the crossing and where his attention would likely be attracted to an approaching train.

After careful consideration of the entire testimony in this case bearing upon the question of defendant's negligence, we are of the opinion that the evidence is not sufficient to carry the case to the jury as indicating the alleged negligence upon the part of the defendant company; that the testimony of the witness Abel is, under all the facts and circumstances, clearly negative testimony, and that he was not in a position as a person who was listening and would have heard whether the warnings of the approaching train were given. The testimony of the defendant's witnesses is positive that warnings were given of the approaching train by two distinct whistles blown before the train approached the crossing, and that the bell was continuously rung for at least a distance of 1,500 feet as it approached the crossing.

Negative testimony of witnesses in a grade crossing accident of this kind that they did not hear a whistle

blown or a bell rung is not enough to make out a charge of negligence against the railroad company, as against the positive affirmative testimony of witnesses who did hear the signals, and who were in a position to know: Anspach v. Philadelphia & Reading Ry. Co. and cases therein cited, 225 Pa. 528.

Verdict for plaintiff for $6,000.  The court subsequently entered judgment for defendant n. o. v.

*Error assigned* was in entering judgment for defendant n. o. v.

*Charles H. Sachs,* for appellant.

*James R. Miller,* of *Patterson, Crawford & Miller,* for appellee.

PER CURIAM, January 8, 1917:

The judgment in this case is affirmed on the opinion of the learned court below directing it to be entered for the defendant non obstante veredicto.

---

# Grossheim *v.* Pittsburgh & Allegheny Telephone Co., Appellant.

*Negligence—Telephone companies — Broken wire — Notice—Injury to pedestrian—Contributory negligence—Case for jury.*

1. A telephone company is entitled to reasonable time and opportunity to discover and repair defective wires; what is a reasonable time must necessarily vary with the circumstances of each case.

2. The fact of the break of a telephone wire, although it does not carry electric current of sufficiently high voltage to be dangerous unless it comes in contact with other wires, is notice that it might become dangerous and imposes the duty of examination, and whether such duty had properly been met under all the circumstances, the lapse of time, the condition and population of the neighborhood, the urgency of the possible danger, etc., are questions for the jury.

3. A person injured as a result of coming in contact with such