# Razzis et ux., Appellants, *v.* Philadelphia & Reading Ry. Co.

*Negligence—Railroads—Grade crossing — Signals — Stop, look and listen—Evidence — Presumption — Contributory negligence— Sudden peril—Case for jury—Death.*

1. In a grade-crossing case to recover damages for the death of a driver, the burden is on plaintiff to show that no proper signals of an approach of a train was given by defendant railway.

2. Such burden is met sufficiently to carry the case to the jury, where two witnesses for plaintiff, who were in favorable positions to hear signals, testify that they heard neither bell nor whistle.

3. In such case, the presumption is that deceased stopped, looked and listened for an approaching train; if there is affirmative evidence that he stopped, the presumption that he looked and listened is strengthened.

4. After stopping, looking and listening at a proper place, it is still the duty of the driver to keep a lookout as he approaches and crosses the tracks, and if he drives in front of an approaching train, he is guilty of contributory negligence, unless his view was obstructed. If the evidence is conflicting as to an obstruction of view, the case is for the jury.

5. If a driver stops at a proper place, he is not bound to stop again before entering upon the tracks. If, however, his view is obstructed he must alight and go forward; but if his view is only partly obstructed or shortened, the question whether he should have gone forward to get a better view, is for the jury.

6. One placed in sudden peril is not required to exercise the best judgment.

Argued February 15, 1922. Appeal, No. 281, Jan. T., 1922, by plaintiffs, from order of C. P. Schuylkill Co., March T., 1919, No. 122, refusing to take off nonsuit, in case of Adam Razzis et ux. v. Phila. & Reading Railway Co. and James C. Davis, Director General of Railroads. Before MOSCHZISKER, C. J., WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Trespass for death of minor son. Before BECHTEL, P. J.

The opinion of the Supreme Court states the facts.
Nonsuit; refusal to remove it. Plaintiffs appealed.

*Error assigned*, inter alia, was refusal to take off non-
suit, quoting record.

*M. A. Kilker*, with him *Walter G. Treibly*, for appel-
lants, cited as to signals: Coleman v. Ry., 195 Pa. 485;
Davidson v. Ry., 171 Pa. 522; Faust v. Ry., 191 Pa. 420.

As to presumption of stopping: Schmidt v. Ry., 244
Pa. 205; Woodruff v. R. R., 231 Pa. 640; Hugo v. R. R.,
238 Pa. 594; Ayres v. Ry., 201 Pa. 124.

*Jno. F. Whalen*, with him *George Ellis*, for appellee.—
This case is on all fours with Gasser v. Ry., 266 Pa. 493.

OPINION BY MR. JUSTICE WALLING, April 17, 1922:

Where defendant's railway, extending northerly from
Ashland Borough, Schuylkill County, crosses a public
highway at grade, it has a double track, that to the west
being northbound. Some twenty or more feet east of
and parallel with the main tracks, a siding crosses the
street, leading to business plants. On June 20, 1918,
John Razzis, plaintiff's minor son, sixteen years of age,
was driving a team, attached to a dump wagon, convey-
ing ashes from west of the tracks to the east side thereof,
where they were used on the highway. He had taken a
load over and on returning found the crossing blocked
by a local train, the engine of which was transferring a
car or cars to the siding, while the balance of the train
stood on the southbound track. Young Razzis stopped
the team just east of the siding, remaining there about
ten minutes until the crossing was cleared, when he
drove over the siding and onto the main tracks where
he and the horses were killed by a northbound fast
freight train on the west track. This suit was brought to
recover the value of the horses and for the death of the
son, but the trial judge granted a compulsory nonsuit,

and, from the order refusing to take it off, this appeal was taken.

The case is a close one but, considering it as we must in the light of the evidence most favorable to plaintiff, the rule to take off the nonsuit should have been granted. It was the duty of the defendant to give due and timely warning of the approach of its train to the crossing, but the burden of proving its failure in that respect was upon the plaintiffs, which they sought to bear by the evidence of Thomas Scully, who was near the track where the north-bound train passed before reaching the crossing; he testified, in effect, that no warning was given, except the two short alarm blasts sounded at the moment of the collision—at least that he heard none and would have heard the bell if rung and likely the whistle, had it been sounded at the whistling board. Clare White, who was with Scully, testified he did not hear the approach of the train until he saw it a hundred feet away. These witnesses were waiting to reload the dump wagon and were in a favorable position to hear warning had it been given by the fast train; while their evidence was not strong it was sufficient to take that question to the jury (Haverstick v. Penna. R. R. Co., 171 Pa. 101; Long-necker v. Penna. R. R. Co., 105 Pa. 328; Hugo v. Baltimore & O. R. R. Co., 238 Pa. 594; Knox v. Ry. Co., 202 Pa. 504; Laib v. Penna. R. R. Co., 180 Pa. 503), especially in the absence of any opposing proof.

The presumption is that the deceased stopped at the proper place, also that he there looked and listened for approaching trains; it is affirmatively shown he stopped, which strengthens the presumption that he looked and listened: see Waltosh v. Penna. R. R. Co., 259 Pa. 372. The tracks, however, were straight for a considerable distance in each direction and, as the deceased was required to keep a lookout while crossing them (Provost v. Director General of R. R., 265 Pa. 589), he was guilty of contributory negligence by driving in front of the approaching engine (Gasser v. Phila. & R. Ry. Co., 266 Pa.

493; Carroll v. Penna. R. R. Co., 12 W. N. C. 348) unless his view was obstructed; as to that the evidence was conflicting. Jacob Reichert testified there were three or four cars from the local train standing on the southbound track to the south of the crossing, which he said obstructed the view until the train got within about one hundred and fifty feet; while several other witnesses said no cars were standing there; this made that a question of fact. Deceased having stopped at the siding was not bound, as a matter of law, to stop again before entering upon the main tracks: Waltosh v. Penna. R. R. Co., supra; Rice et ux. v. Erie R. R. Co., 271 Pa. 180; Benner v. Phila. & R. Ry. Co., 262 Pa. 307; Moore v. Penna. R. R. Co., 242 Pa. 541. True, where the view of tracks is so obstructed that a driver cannot otherwise ascertain the movement of trains thereon, he must alight and go forward where he can see, before driving upon the crossing; but that rule is not applicable here for, assuming the accuracy of Reichert's evidence, the standing cars constituted only a partial obstruction or shortening of the view; in which case the question of the driver's duty to go forward where he could get a better view was for the jury: Messenger v. Penna. R. R., 215 Pa. 497; Siever v. Pbg., C., C. & St. L. Ry. Co., 252 Pa. 1; Gasser v. Phila. & R. Ry. Co., supra. The court below overestimated the importance of the fact that, as the boy was driving forward, a brakeman told him to go ahead he could make it and slapped one of the horses on the back; that was not conclusive evidence of the knowledge of either that a fast train was approaching, or of an attempt by the deceased to go in front of it. Just as probably the remark had reference to the movements of the shifting engine and cars upon the southbound track. Moreover, the fact that the boy stopped the team and endeavored to back off the west track, when he saw the engine approaching thereon, tends to show he was not trying to cross ahead of the train, although the horses had trotted on to the main tracks and it might then have

been wiser had he urged them forward; but, placed in sudden peril, he was not required to exercise the best judgment.

The judgment is reversed with a procedendo.