Fearn, Appellant, *v.* City of Philadelphia.

Argued December 6, 1935. Before FRAZER, C. J., KEP-HART, SCHAFFER, DREW and BARNES, JJ.

*Joseph G. Feldman,* with him *Maurice E. Cohen,* for appellant.

*Charles M. Willits,* with him *John J. K. Caskie,* Assistant City Solicitors, and *David J. Smyth,* City Solicitor, for appellee.

Opinion by Mr. Justice Kephart, January 6, 1936:

At about midnight in March, plaintiff, walking east on the north side of Girard Avenue, Philadelphia, reached a point thirty feet from its well-lighted intersection with Third Street and proceeded to cross the avenue on a slight southeast diagonal. From curb to curb Girard Avenue is sixty-eight feet and its center is occupied by a double car track line of some fifteen feet. A cartway of twenty-six feet in width is on either side of the tracks. Before stepping from the north curb plaintiff looked to the east and, observing no traffic from that direction, proceeded to the middle of the west-bound track which is on the north side of the street. He then looked west for the first time and saw a single headlight approaching east of Fifth Street. Continuing across he reached the southernmost rail and, again looking to the west, observed that the vehicle with the single headlight had approached within approximately two hundred feet. With this vehicle rapidly approaching from his right, plaintiff continued onward and when about ten feet from the south curb, he looked to the right and was immediately struck by a motorcycle traveling approximately twenty-five miles per hour, with its siren in constant use, and operated by a police officer responding to an emergency call. Plaintiff's own witness testified that he heard this siren when between Second and Third Streets; plaintiff did not recall hearing any signal. Testimony was offered to show that plaintiff was intoxicated at the time of the accident and that, in the neighborhood of the place where he was knocked down, there was found a broken bottle of cheap liquor.

The defense showed that the vision of the motorcycle operator was obscured by an automobile traveling in the same direction, which turned left to go north when

seventy-five feet from Third Street. Then for the first time plaintiff, but ten or fifteen feet away, came into the officer's view. His attempt to drive to the left to avoid him was unsuccessful, and plaintiff was struck with the right side of the handle bars of the motorcycle. The jury returned a verdict for plaintiff, but the court below entered judgment n. o. v. for defendant on the ground of contributory negligence. This ground is the only matter to be considered here, although additional reasons were argued in the court below in support of the motion for judgment.

When a pedestrian crosses a street at an intersection, motorists must be highly vigilant and maintain sufficient control of their cars to stop at the slightest notice of danger. At intersections there is the greatest probability of danger and motorists must therefore exercise the highest degree of care to avoid accidents. But when a pedestrian traverses a street between intersections, since he is not crossing at a place where he is expected to be, he must exercise a higher degree of care for his safety; motorists are correspondingly held to a less degree of care: Johnson v. French, 291 Pa. 437.

Plaintiff, although making an observation in only one direction when he stepped from the curb, arrived safely at the middle of the trolley track. He then looked to the west and observed the single headlight of an approaching vehicle. Proceeding for a distance of thirteen feet, he again looked and saw the motorcycle at a much closer distance. Without further observation he continued to cross. He should have had due regard for the conditions of the traffic before he committed himself to the further act of crossing and, as we stated in Gavin v. Philadelphia Rapid Transit Co., 271 Pa. 73, and Schuchalter v. P. R. T. Co., 288 Pa. 189, "if he deliberately attempts to cross the street when vehicles are rapidly approaching close by, and injury results, he will be chargeable with such carelessness as to prevent a recovery of damages": Anderson v. Wood, 264 Pa. 98,

100. Plaintiff should have been impressed with the fact that he was taking a chance in attempting to pass over the remaining distance before the motorcycle reached him. The court below reasoned that since the motorcycle traveled 700 feet while plaintiff was traveling 13 feet he must have had ample notice of the condition of the traffic and speed of the approaching vehicle. If the distance traveled by the motorcycle was but 200 to 300 feet as appellant's witness states, still there was notice of speed to be guarded against. Appellant, however, neither slowed his pace nor did he hurry, but proceeded at the same rate with the smallest concern for his own safety. Under the circumstances, he could not ignore the use of his senses or of those proximate judgments of distances and speeds which environment and experience demand of all of us.

Plaintiff conceded he saw the approaching car; he also heard or should have heard the siren of the motorcycle. Its driver and the officer immediately following him testified that it was sounded, and plaintiff's witness stated that he heard it at a point more distant from the motorcycle than was plaintiff. Plaintiff said he did not remember hearing it. Under similar circumstances we have held that negative testimony cannot prevail to establish an essential fact, especially where others say positively the signal was given: Zotter v. Lehigh Valley R. R. Co., 280 Pa. 14, 18; Haskins v. P. R. R. Co., 293 Pa. 537; Grimes v. P. R. R. Co., 289 Pa. 320; Anspach v. Phila. Ry. Co., 225 Pa. 528. While the above principle need not be applied in its strictness to this case, plaintiff, from the testimony, was inattentive or careless to a degree amounting to indifference to danger, and undertook the hazard without exercising any of the precautions ordinarily taken for one's own safety.

Having exposed himself to a serious risk, the very least he could have done was to keep looking at the vehicle which he knew was coming toward him. In Anderson v. Wood, supra, we stated, ". . . he is under no fixed

duty to look back; *though the circumstances may be such that in the exercise of due care it would become his duty to look and it would be negligence for him to disregard it."* Such circumstances here existed. Plaintiff could expect traffic from one direction only, and knew it was approaching from that direction at a rapid rate of speed. There was nothing to distract his attention, and it was his duty to maintain observation of the approaching motorcycle's position. Anderson v. Wood, supra, decided more than 15 years ago, recognized the pedestrian's obligation due to increased vehicular traffic. The years that followed have increased the necessity for pedestrians to take precautions for their own safety. This court recently announced in a "between crossing" case that one "who fails to look before undertaking a street crossing, *and who does not continue to look as he proceeds,* is chargeable with negligence. Such a duty is particularly incumbent on one who is traversing a street in traffic, as in this case, not an authorized crossing": Carnevale v. McCrady Rodgers Co., 318 Pa. 369, 371. Plaintiff's conduct when tested by this injunction violated this salutary rule. He did not look after he left a place of safety but walked with his eyes turned away from the approaching car.

The cases cited by appellant are distinguishable. Some concern crossings at intersections where different duties arise; others are distinguishable because the pedestrian had practically reached a place of safety when struck down; still others, because in them plaintiff was assisted by the presumption of due care which a deceased person is said to have exercised. The instant case differs from all of them in that there here exists what amounts to conscious indifference to factors indicative of danger.

Judgment affirmed.