## Williams, Appellant, *v.* Pittsburgh.

Argued March 28, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*J. Thomas Hoffman,* with him *N. J. Lippard,* for appellant.

*Thomas E. Barton,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 22, 1944:

This case arises out of a collision at a street intersection in Pittsburgh between a motorcycle operated by plaintiff and a fire truck responding to an alarm. Plaintiff was injured and recovered a verdict against the city, but the court entered judgment for defendant n. o. v.

By virtue of Section 619 of the Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 29, 1937, P. L. 2329, a municipality is liable for damages caused by the negligence of its employe while operating fire department equipment upon a highway in the course of his employment. Other provisions of the act,[1] however, exempt fire department vehicles, when traveling in response to an alarm, from the prescribed traffic rules and regulations, provided the vehicle is "operated with due regard for safety" and not with "a reckless disregard of the safety of others." It therefore is necessary, in order to impose liability upon a municipality, to prove recklessness on the part of the operator: *Reilly v. Philadelphia*, 328 Pa. 563, 569, 195 A. 897, 900.

According to plaintiff's version of the occurrence he was driving his motorcycle east on Bayard Street and as he entered the intersection of Neville Street came into collision with the city's fire truck which came north on the latter street without ringing a bell or sounding a siren and at an estimated speed of 40 to 45 miles an hour. The accident happened around the noon hour of a weekday; at that time and place there usually is heavy traffic. The signal light was green for Bayard Street and red for Neville.

It will be seen that plaintiff, in order to establish defendant's liability, relies upon three factors: (1) the speed of the fire truck, (2) its running through a red light, and (3) the failure to give warning of its approach. The charge of excessive speed fails in view of section 1002(f) of the Vehicle Code, which provides that the speed limitations applicable to other vehicles shall not apply to those of the fire department when traveling in response to a fire alarm if operated with due regard for safety. The legislature evidently thought that greater danger to human life and property would be likely to result from delay in checking a fire than from engines traveling at high rates of speed. The same

---

[1] Sections 1002(f), 1014(b), 1016(d), 1026(d).

observation holds true concerning the charge of disregarding the signal light at the intersection, for section 1026 (d) of the Vehicle Code provides that the ordinary rules in that regard are similarly inapplicable to fire department vehicles. Neither of these complaints, therefore, is sufficient to establish that defendant's fire truck was being operated with reckless disregard of the safety of others: see *Reilly v. Philadelphia,* 328 Pa. 563, 569, 195 A. 897, 900.

The controlling question is the alleged failure of the operator of the truck to give audible warning of its approach. Certainly a jury might well conclude, as apparently in this case it did, that if a fire engine was driven at the rate of 40 to 45 miles an hour through a red light at a busy crossing without sounding either a bell or siren it was being recklessly operated, with resulting liability to the city for injury occasioned thereby to a person traversing the intersection. But was there sufficient evidence to go to the jury from which it could be found that no such warning was given? Plaintiff testified that no bell was rung or siren sounded, that if there had been he would have been able to hear it, that there was "no sound whatsoever." A witness for plaintiff who was driving a truck east on Bayard Street, "between four and five truck lengths" to the rear of plaintiff, stated that he did not hear any siren or bell until the fire truck "got into the intersection", but he did hear it then. On the other hand, the acting captain on the fire truck testified that as it went up Neville Street he rang the bell and, with his foot, operated the electrical siren. The driver said that the bell and siren were both being sounded, the siren being "the latest type—which you can hear approximately three quarters of a mile." Three other witnesses for defendant, all apparently disinterested, testified to the same effect. One of them was a twelve year old school boy who was riding his bicycle eastward on Bayard Street about 100 feet east of Neville; when he heard the bell and siren he turned around

and started back toward the corner and had reached a point about 50 feet away when the accident occurred. Another school boy of the same age was at Bayard and Melwood Streets, the latter being a block west of Neville; he was acting as a "patrol boy" to see the school children safely across the street; he testified that he heard the siren even before the motorcycle passed him going east on Bayard Street. A "route man" for a newspaper who was standing on Bayard Street about 50 feet west of Neville testified that he heard the siren while the fire truck was coming up the latter street and before it arrived at the intersection.

Negative testimony of a plaintiff and his witnesses that they did not hear any whistle or bell or an approaching vehicle is sufficient to go to the jury if the defendant produces no evidence to the contrary,[2] but, if there is positive testimony of witnesses that they did hear such a warning given, the negative testimony is insufficient to make out a charge of negligence.[3] It was said in *Urias v. Pennsylvania R. R. Co.,* 152 Pa. 326, 328, 25 A. 566, 567: "One witness who hears the ringing of a bell is worth more than the testimony of a dozen witnesses who did not hear it, unless in some manner their atten-

---

[2] *Haverstick v. Pennsylvania R. R. Co.,* 171 Pa. 101, 106, 107, 32 A. 1128, 1130; *Kuehne v. Brown,* 257 Pa. 37, 40, 101 A. 77, 78; *Razzis v. Philadelphia & Reading Rwy. Co.,* 273 Pa. 550, 552, 117 A. 204, 205.

[3] *Hauser v. Central R. R. Co. of New Jersey,* 147 Pa. 440, 446, 447, 23 A. 766, 768; *Keiser v. Lehigh Valley R. R. Co.,* 212 Pa. 409, 411-413, 61 A. 903, 904; *Anspach v. Philadelphia & Reading Rwy. Co.,* 225 Pa. 528, 532, 74 A. 373, 374, 375; *Kubrak v. Pennsylvania R. R. Co.,* 255 Pa. 379, 381, 382, 100 A. 94; *Rapp v. Central R. R. of Pennsylvania,* 269 Pa. 266, 269, 270, 112 A. 440, 441; *Craft v. Hines, Director General,* 272 Pa. 499, 503-506, 116 A. 379, 380, 381; *Zotter v. Lehigh Valley R. R. Co.,* 280 Pa. 14, 17-20, 124 A. 284, 285, 286; *Haskins v. Pennsylvania R. R. Co.,* 293 Pa. 537, 545-547, 143 A. 192, 195; *Miller v. Pennsylvania R. R. Co.,* 299 Pa. 63, 68, 149 A. 85, 86, 87; *Fearn v. City of Philadelphia,* 320 Pa. 156, 159, 182 A. 534, 536; *Reilly v. Philadelphia,* 328 Pa. 563, 568, 195 A. 897, 900; *Ealy v. New York Central R. R. Co.,* 333 Pa. 471, 476-478, 5 A. 2d 110, 113.

tion had been especially called to it. The witness who heard the bell either tells the truth, or he tells a deliberate and willful falsehood, while the witness who did not hear the bell may be, and is probably truthful." Testimony that a bell or whistle was not sounded is regarded as being of a higher grade than negative only when it comes from a witness who was in a position to hear, was paying especial attention, and for some particular reason was listening for just such a warning.[4]

An analysis of the evidence in the present case indicates that it does not measure up to the required standard. The testimony of plaintiff's witness was wholly negative in character, and plaintiff's own testimony, although expressed in more affirmative terms, was not buttressed by any statement to the effect that as he drove his motorcycle along Bayard Street he was *consciously listening* for warnings from traffic approaching from the intersecting street; for all that appears, his failure to hear what so many others heard may have been due to mental pre-occupation or inattention. In view of this fact, in view of the positive testimony of five witnesses on behalf of defendant that the bell was rung and the siren sounded, and in view of the testimony of plaintiff's own witness that he heard the siren at least as the fire truck came into the intersection, no verdict for plaintiff could be sustained on his mere assertion that no audible warning was given. The action of the court below in granting judgment for defendant n. o. v. was therefore proper.

Judgment affirmed.

---

[4] *Longenecker v. Pennsylvania R. R. Co.*, 105 Pa. 328, 333, 334; *Quigley v. Delaware & Hudson Canal Co.*, 142 Pa. 388, 396, 21 A. 827; *Schwarz v. Delaware, Lackawanna & Western R. R. Co.*, 218 Pa. 187, 193, 67 A. 213, 214, 215; *Buckman v. Philadelphia & Reading Rwy. Co.*, 232 Pa. 351, 355, 81 A. 332, 333, 334; *Simons v. Philadelphia & Reading Rwy. Co.*, 254 Pa. 507, 509, 98 A. 1080, 1081; *Mellon v. Lehigh Valley R. R. Co.*, 282 Pa. 39, 42, 127 A. 444, 445; *Sharpless v. Delaware, Lackawanna & Western R. R. Co.*, 286 Pa. 439, 444, 445, 133 A. 636, 637, 638.