Oscar W. STEIDEL, Appellant,

v.

Frank O'DONNELL and The Pennsylvania Company For Banking and Trusts.

No. 11643.

United States Court of Appeals
Third Circuit.

Argued Nov. 15, 1955.

Decided March 29, 1956.

Henry T. Reath, Philadelphia, Pa. (Benjamin H. Read, Duane, Morris & Heckscher, Philadelphia, Pa., on the brief), for appellant.

John J. McDevitt, 3d, Philadelphia, Pa. (Bernard J. Smolens, Philadelphia, Pa., on the brief), for appellees.

Before BIGGS, Chief Judge, and KALODNER and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

The plaintiff, Steidel, was injured as a result of being struck by an automobile driven by the defendant, O'Donnell, while in the course of his employment with the defendant, The Pennsylvania Company for Banking and Trusts. The jury returned a verdict in Steidel's favor. Both defendants moved for a judgment n. o. v., which was granted. From that judgment, Steidel appeals.

Fifteenth Street, Philadelphia, is a north-south street, with one-way traffic southbound. At the time of the accident, the tracks of the Pennsylvania Railroad ran over Fifteenth Street between Pennsylvania Boulevard and Market Street on a structure known as the Chinese Wall. The plaintiff, after walking south in the underpass on the west sidewalk, stepped from the curb at a point 70 to 90 feet north of the intersection of Fifteenth with Market Street. He testified that there were three automobiles and a truck parked on the west side of Fifteenth Street, to the north, although their exact locations are in dispute. Steidel started to cross Fifteenth Street diagonally towards the southeast, in the direction of a subway entrance at the northeast corner of Fifteenth and Market Streets. He stated that before crossing he looked to the north and saw that the street was free from traffic up to Pennsylvania Boulevard, a distance of some 200 feet and as far as he could see. Thereafter, apparently he did not look to the north. About five seconds after he left the curb and when he had reached a point about twelve feet out (eighteen feet diagonally) from it, he was struck by the right front fender of the car operated by O'Donnell, which was moving south near the middle of the street. Steidel did not see the car until some time after the impact. O'Donnell testified that he was driving at about fifteen miles an hour and that he stopped the car within about twelve feet. There is no testimony to the contrary.

It is the well established law of Pennsylvania that a pedestrian who crosses a street between intersections is not negligent as a matter of law. Elbell v. Smith, 1947, 357 Pa. 490, 55 A.2d 321; Anderson v. Wood, 1919, 264 Pa. 98, 107 A. 658; Lamont v. Adams Express Co., 1919, 264 Pa. 17, 107 A. 373. However, the standard of care to which a pedestrian so crossing is held is higher than that required of a pedestrian who crosses at an intersection. Rucheski v. Wisswesser, 1947, 355 Pa. 400, 50 A.2d 291; Fearn v. City of Philadelphia, 1936, 320 Pa. 156, 182 A. 534; Virgilio v. Walker & Brehm, 1916, 254 Pa. 241, 98 A. 815.

"[A] pedestrian who fails to look before undertaking a street crossing, and does not continue to look as he proceeds, is chargeable with negligence. Such a duty is particularly incumbent on one who is traversing a street in traffic, * * * not at an authorized crossing. Moreover, one cannot be heard to say that he looked and did not see an approaching danger which was plainly visible [citing cases]; where the facts show contributory negligence on the part of a pedestrian, the court is bound to declare it as a matter of law. * * *" Carnevale v. McCrady-Rodgers Co., 1935, 318 Pa. 369, 371, 178 A. 472, 473. Rucheski v. Wisswesser, supra, and Fearn v. City of Philadelphia, supra, are in accord. Steidel's testimony indicates either that

he failed to continue to look after leaving the curb or that he failed to see the obvious if he did look.[1] It would therefore appear to follow that we should affirm the judgment n. o. v. for the defendants.

The plaintiff, however, counters with the following language from Anderson v. Wood, supra, 264 Pa. at page 100, 107 A. at page 659: "[H]aving observed the traffic, and it being far enough away that a pedestrian using due care would deem it safe to go across in front of the approaching traffic, *he is under no fixed duty to look back*, though the circumstances may be such that in the exercise of due care it would become his duty to so look, and it would be negligence for him to disregard it." (Emphasis supplied by the plaintiff.) The language quoted is cryptic indeed; but in that case, the pedestrian died as a result of injuries sustained in the accident and, as such, was "entitled to the presumption that * * * [he] did that which a prudent man would do under the circumstances, and that *he continued to do so until the accident took place*." Id., 264 Pa. at page 101, 107 A. at page 659. (Our emphasis.) In view of this and the other Pennsylvania decisions discussed above, it would appear that the second half of the previous quotation is entitled to at least as much, if not greater, emphasis than the first half. The only two other decisions cited to us favorable to jay-walking pedestrians involve extreme facts. In Robb v. Quaker City Cab Co., 1925, 283 Pa. 454, 129 A. 331,

the plaintiff was struck when two feet from a safety island and after covering 50 feet. In Lamont v. Adams Express Co., supra, the plaintiff was struck by a vehicle heading west in the eastbound lane of a two-way street. Decisions involving intersection accidents, particularly those where the pedestrian had a traffic signal in his favor, are not in point because of the lower standard of care required of the pedestrian. And, obviously, those cases in which the plaintiff continued to look for traffic after leaving the curb have no bearing. These distinctions are supported by the decision of the Pennsylvania Supreme Court in Fearn v. City of Philadelphia, supra, 320 Pa. at page 160, 182 A. at page 536.

Although there is no reported Pennsylvania decision on all fours with the case at bar, we think it is clear from the above that the Pennsylvania Supreme Court would not permit the question of the plaintiff's contributory negligence to go to the jury. The plaintiff here started diagonally across a heavily traveled thoroughfare during the height of the afternoon rush hour with his back towards the direction from which traffic would come. Moreover, he did so in the dimly lit underpass beneath the old Chinese Wall where motorists would have difficulty seeing him. Under the circumstances, Steidel's failure to keep a close lookout after leaving the curb assuredly was negligence under the Pennsylvania law.

The judgment of the court below will be affirmed.

---

1. "Q. As you were standing on the curb and before you started to go across, will you tell us what, if anything, you did?
"A. As I am coming to this corner, I made a stop, looked back down toward Pennsylvania Boulevard because that was where the traffic was coming from. The street was clear.
"Q. How far could you see?
"A. I could see all of the way to the corner.
"Q. All right, sir.
"A. The street was absolutely free of traffic.
"Q. All right.
"A. So then I started to cross.

"Q. And you were heading for the subway?
"A. I was heading for that subway kiosk—what do you call it, the covering over the subway station.
"Q. As you were crossing, what happened?
"A. I got approximately in the middle of the street when I got hit. That is about all I know. I didn't even see the car or nothing else.
"Q. You have no recollection of seeing the car which struck you?
"A. No recollection."
Record, pages 16–17.