O'Neill *v.* Reading Co., Appellant.

320

Argued February 11, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*George Ellis,* with him *John F. Whalen,* for appellant, cited: Zotter v. R. R., 280 Pa. 14.

*Samuel Kagle,* with him *George C. Klauder,* for appellee, cited: Sharpless v. R. R., 286 Pa. 439; Kelly v. R. R., 274 Pa. 470; Roberts v. Canal Co., 177 Pa. 183; Siever v. Ry., 252 Pa. 1; Messinger v. R. R., 215 Pa. 497; Johnson v. Director General, 278 Pa. 491; Sharpless v. R. R., 286 Pa. 439; Lyke v. R. R., 236 Pa. 38; Bickel v. R. R., 217 Pa. 456; Grimes v. R. R., 289 Pa. 320.

OPINION BY MR. JUSTICE SADLER, March 18, 1929:

Decedent, the eighteen-year-old son of the plaintiff, residing with her at the time of the accident, was driving, about noon on March 16, 1924, the motor of a brewery company, by which he was employed, north on Third Street on the outskirts of the Borough of Ashland. He was well acquainted with the locality, and knew that it was necessary to cross the tracks of the defendant railroad to reach his destination. The highway in front of him was straight, and for 400 yards he could see the

ordinary warning signs, as well as the checkered safety gates, located both on the south and north, and the watchman's shanty constructed on the south side, from which direction he was coming. About 1,500 feet to the east was the Ashland passenger station, and for 1,000 feet of that distance the tracks approaching Third Street were straight, crossing the borough highway nearly at right angles. Two houses were located thirty-six feet south from the right-of-way, and, when passed, according to the pictures produced by plaintiff's photographer, a view could be had to the east at least 834 feet to a trestle. It was uncontradictedly shown at the trial by the civil engineers called by defendant that vision could be had for 1,525 feet. An effort was made to prove that a slight embankment on the south side, about 500 feet distant, would, to some degree, prevent a clear view of the track itself, but an oncoming train could, beyond dispute, be observed for a much greater distance.

O'Neill, the driver of the car, approached the crossing evidently at considerable speed, for he passed a car some 400 yards to the south, whose operator immediately thereafter heard the whistle, and the decedent must have covered that distance before he came upon the train at the crossing. The sign post was 1,323 feet away, and the train could only have traversed that space while the decedent was advancing over nearly the same distance before the accident occurred. An attempt was made to show that a signal was sounded when the train was only three hundred feet from Third Street. It was testified, without contradiction, by the engineer of the defendant company, that a whistle also was blown at the regular place. The motorist came to the crossing, passed the first track, and struck the front of the engine, which was moving west on the second one. His car was thrown backwards by the impact, and struck the crossing watchman, who is uncontradicted in the statement that he had run out into the center of the road trying to stop the car driver by calling to him, and who

likewise swore that O'Neill did not stop, look and listen, in which averment he is borne out by all of the attendant circumstances appearing.

The statement of claim did not set forth that decedent stopped, looked and listened before attempting to cross, but asserted negligence based on excessive speed, lack of proper signals and failure to have the safety gates lowered. Plaintiff further rested on the legal presumption that the deceased had performed his full duty in approaching the grade crossing, but such evidence as was produced and the physical facts so clearly negatived this conclusion that it was plainly error to permit a jury to find to the contrary. There is reason for assuming that one will not recklessly expose himself to danger, but will take the precautions obviously necessary to a prudent man who knows of the existence of a dangerous situation such as is presented in crossing railroad tracks where trains, having the right of way, may pass. Yet a jury will not be permitted to rest a finding for plaintiff, as it did here, on the presumption that deceased stopped, looked and listened, when the facts show that he must have seen the approaching train, if he had done what the unbending rule of law requires. Under such circumstances the court should declare, as a matter of law, that no such presumption arises: Henry on Trial Evidence, page 437.

In passing upon the question, all of the facts favorable to plaintiff, with proper inferences deducible therefrom, must of course be solved in favor of the claimant. But the doctrine that a person, losing his life in a grade crossing accident, must be assumed to have used due care, has no application where the circumstances show the opposite to be the fact: Zotter v. Lehigh Valley R. R. Co., 280 Pa. 14. This is true where the physical facts disclose that had the deceased performed his legal obligation to stop, look and listen, he would have observed the obvious peril in attempting to advance, yet voluntarily assumed the risk (Tull v. B. & O. R. R. Co., 292

Pa. 458; Joseph v. P. & W. Va. Ry., 294 Pa. 315), and, under such circumstances, his contributing negligence should be declared as a matter of law by the court, though the testimony consists of oral declarations of those called by defendant, when they are corroborated by the apparent physical facts: Grimes v. P. R. R. Co., 289 Pa. 320. Even had O'Neill survived and testified that he stopped, looked and listened, and saw no train approaching, when the same must have been visible had he made any attempt to observe, the jury would not have been permitted to find a verdict in the face of a patently impossible story: Myers v. B. & O. R. R. Co., 150 Pa. 386.

Under all the testimony of both plaintiff and defendant, and as shown by both photographs and maps, he could have seen an oncoming train for at least 834 feet along a straight track. What was said in a similar case is applicable under the circumstances now presented: "There are allowable here but two logical conclusions: Either [decedent] stopped and looked, heard and saw the engine approaching, and took his chance of clearing the crossing ahead of it; or else, having, at a point distant from the crossing, observed or heard the engine coming, he took an equally fatal chance, and failed to stop, but drove upon the crossing at the very instant the locomotive arrived at that point": Haskins v. P. R. R. Co., 293 Pa. 537, 544. O'Neill was approaching from the south, and had a clear view for several hundred feet toward the Ashland Station, from which direction the train approached. He had not entered upon the track on which it was moving when the collision occurred, but the front of his car struck the engine and was thrown backward. Under such circumstances, binding instructions should have been given for the defendant.

Even if the facts had not negatived the presumption that decedent stopped, looked and listened, it was necessary that the negligence of defendant company appear, or facts shown from which it might be inferred, before

a verdict for the plaintiff could be sustained. Here it was rested, in part, on the failure to give a warning when approaching the crossing. Three witnesses for the claimant testified concerning this question. Two declared they heard two blasts at a distance at least three hundred feet away, and the third could not say whether a whistle was blown or not. The one last mentioned was driving, as he said, in a noisy car, and did not hear the signal, but expressly stated that he could not say whether or not one was given. None of these parties, produced by plaintiff, testified that no warning was given at the post 1,323 feet to the east, as sworn affirmatively by defendant's employees, or stated facts to indicate that they would necessarily have heard had a whistle been also blown at that point, and, as to this, their testimony was negative in character, and readily distinguishable from the evidence considered in Sharpless v. D., L. & W. R. R. Co., 286 Pa. 439, relied on by appellee. In the case referred to, one of the witnesses declared that he could not have helped hearing if the signal had been given, and others that they were standing by the track, waiting for the particular train, and no warning was sounded until within 75 feet of them. Under such a situation, the evidence was held to be for the jury, but it differs widely from that presented here.

It was further urged that there was sufficient proof of negligence when it was made to appear that only one of the two safety gates was down, the other being only partly lowered, at the time of the collision, and the further proof that the one lowered had not attained that position until the train had reached the crossing. Even though both were upright this would not have excused the deceased from stopping, looking and listening. Though the position of the gates could be considered, if the legal duty to stop had been established, as indicating a lack of due care for the protection of the public (Lake Shore R. R. Co. v. Frantz, 127 Pa. 297), yet in itself

such testimony is insufficient to carry the case to the jury where the one crossing failed to perform the legal duty imposed on him. The fact that the safety gates at a railroad crossing are open does not relieve the driver of an automobile of the duty of stopping the machine before he attempts to make the crossing, and where he fails to stop, but drives his car until within so short a distance of the tracks that he cannot stop in time to avoid a collision, he is precluded from recovering in an action against the railroad company. The presence of gates does not absolve the public from exercising proper care to protect themselves: Earle v. P. & R. Ry. Co., 248 Pa. 193; Moses v. Northwestern R. R. Co., 258 Pa. 537; Sharpless v. D., L. & W. R. R. Co., supra. And this rule is applied likewise where the plaintiff rests his case on a presumption that decedent stopped, which ordinarily arises, when the physical surroundings show he did not do so, as here: Zotter v. L. V. R. R. Co., supra. Nor did plaintiff prove such excessive speed, in the movement of the train, as to justify the submission of the case to the jury. Had O'Neill been observant, as is the duty of an ordinarily prudent person, he could have seen the engine, and brought his motor to a standstill before reaching the track on which it was moving.

Other assignments of error relate to the admission of testimony, but, in view of our conclusion that binding instructions should have been entered for defendant, or judgment entered in its favor after verdict rendered for plaintiff, any discussion of the matters suggested becomes unimportant.

The judgment is reversed and here entered for defendant.