Miller *v.* Penna. R. R., Appellant.

64

Argued December 5, 1929. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Philip Price,* of *Barnes, Biddle & Myers,* for appellant.—Plaintiff was herself negligent: Patton v. George, 284 Pa. 342; Woomer v. R. R., 80 Pa. Superior Ct. 261, 265; Griffiths v. Tr. Co., 292 Pa. 489, 493; Mack v. R. R., 92 Pa. Superior Ct. 455; Joseph v. Ry., 294 Pa. 315; Lunzer v. R. R., 296 Pa. 393; Radziemenski v. R. R., 283 Pa. 182; Craig v. R. R., 243 Pa. 455; Luken v. R. R., 267 Pa. 315; Barnes v. Ry., 86 Pa. Superior Ct. 332; Carroll v. R. R., 12 W. N. C. 348; Mensch v. Director General, 274 Pa. 356; Grimes v. R. R., 289 Pa. 320, 326; Morningstar v. R. R., 290 Pa. 14, 18, 20; Tull v. R. R., 292 Pa. 458, 461-2; Haskins v. R. R., 293 Pa. 537, 543; Szmigel v. Director General, 76 Pa. Superior Ct. 230; Kinter v. R. R., 204 Pa. 497; Kipp v. R. R., 265 Pa. 20; Baltimore & Ohio R. R. v. Goodman, 275 U. S. 66.

There was not sufficient evidence to submit to the jury: Rapp v. R. R., 269 Pa. 266; Zotter v. R. R., 280 Pa. 14; Craft v. Hines, 272 Pa. 499; Grimes v. R. R., 289 Pa. 320.

*George Demming,* for appellee.—Plaintiff did all that the law compels her to do, and observed proper precautions before going on the track and committing herself to the crossing: Leftage v. R. R., 250 Pa. 452; Howard v. R. R., 219 Pa. 358; Carroll v. R. R., 12 W. N. C. 348; Mills v. R. R., 284 Pa. 605; Rice v. R. R., 271 Pa. 180; Siever v. R. R., 252 Pa. 1; Burkett v. R. R., 74 Pa. Superior Ct. 404; Hanna v. Ry., 213 Pa. 157; Messinger v. R. R., 215 Pa. 497; Calhoun v. R. R., 223 Pa. 298, 300; Jester v. R. R., 267 Pa. 10, 14; Thomas v. R. R., 275 Pa. 579; Olive v. R. R., 275 Pa. 173.

By reason of the undoubted facts left out of consideration in the testimony of the witness the case is not brought within the rule of "the certainty of an infallible mathematical test," but all the facts and inferences therefrom in the case are necessarily for the jury: Heh v. Gas Co., 201 Pa. 443, 447; Hartig v. Ice Co., 290 Pa. 21, 31, 32, 33; Folger v. Rys., 291 Pa. 205, 210; Downey v. R. R., 219 Pa. 32; Corbin v. Refractories Co., 277 Pa. 126; Pfeffer v. Johnstown, 287 Pa. 370.

There was sufficient evidence of defendant's negligence for submission to the jury: Seifred v. R. R., 206 Pa. 399; Gerg v. R. R., 254 Pa. 316; Babbitt v. Jackson, 279 Pa. 480; Razzis v. Ry., 281 Pa. 96, 98; Mellon v. R. R., 282 Pa. 39, 42; Neuman v. Reading Co., 283 Pa. 416, 418.

OPINION BY MR. JUSTICE SADLER, January 6, 1930:

The plaintiff, accompanied by two nephews, drove her car toward Pottstown shortly after noon on a clear day. She approached from the south by a public road, which ran in the rear of Kenilworth Station and intersected Keim Street, which crossed to the east at grade the tracks of the defendant company. The main line, used for through travel, was on the western side, and two sidings, one for passing and the other for industrial purposes, paralleled it beyond. The highway approach was stated by plaintiff's witnesses to be rough, and the

ascent to be on a 15% grade, though the actual measurements with appropriate surveying instruments showed the first half of the rise to be 4.3% and the second portion but 2%. To the south, at a distance of 97 feet, was the station building, located 12 feet west of the track, with an overhanging roof of 2 feet. One seated in an automobile 5 or 6 feet above the level of the road, as testified, could clearly see to the south beneath this projection when the east line of the station building was reached. Between it and the road there was no object interfering with vision except a telegraph pole, part of a line which extended south of the station, but 16 feet west of the first track. Back of the latter, to the west, and farther from the rails, were some trees and shrubbery. After passing the front line of the station, 12 feet from the first rail, the view, along the rails upon which the train came, was 4,150 feet, as shown by accurate survey. Witnesses for plaintiff estimated that sight could be had for only 125 feet when 16 feet from the track, and for 300 feet when 10 feet away, but it is clear from the photographs and actual measurements that, at the latter point, there was a clear sight beyond the station for three-fourths of a mile.

Near the intersection of the public road and Keim Street were flashlights, indicating, the movement of trains on the west track, though not upon the sidings. Testimony was offered to show that at various times these did not work when trains approached, and complaints of this condition had been made. This was explained by showing that the failure to flash occurred only when train movements were taking place on other than the main track. Evidence was offered to establish proper inspection of the lights in question on the morning of the accident, and soon thereafter, and, at both times, they were found to be in proper working order. One witness for plaintiff stated the light did not flash on the day of the injury, but the block records of the railroad showed that, at the hour fixed, the movement

was on an adjoining siding and not on the main track for which the light was designed, and with which it was alone connected. Railroads may provide lights or gates for the protection of those crossing, but their presence does not excuse one passing who fails to exercise due precaution for his own safety: Zotter v. L. V. R. R. Co., 280 Pa. 14; O'Neill v. Reading Company, 296 Pa. 319. The temporary failure of such device to operate will not convict the defendant of negligence, unless it had notice, actual or constructive, of the defect.

In the present case, the plaintiff was not misled by the absence of a light, if in fact the same did not flash. According to her statement, she had already passed the pole where it was placed before her car was stopped to make observations. This was at a point 16 feet from the first track, the usual place, if her witnesses are to be believed, and therefore a proper one: Olive v. Director General, 275 Pa. 173. But her obligation did not cease with this act. There remained the duty to continue to look and listen: Mensch v. Director General, 274 Pa. 356; Provost v. Director General, 265 Pa. 589. At the point first mentioned, she stated her ability to see for 125 feet, and at 10 feet from the track, where the next observation was made, 300 feet, but saw no train on either occasion. In so declaring, she must be in error, for both photographs and actual measurements disclose that an unobstructed view to the south for 4,150 feet could have been had when she had reached the east line of the station, the second place where she looked. "While it is not the province of this court to decide disputed questions of fact, and we are bound to give the plaintiff the benefit of all favorable inferences which may be drawn from the testimony of her witnesses, yet we are not required to believe what physical facts demonstrate to be untrue": Radziemenski v. B. & O. R. R. Co., 283 Pa. 182; Lunzer v. P. & L. E. R. R. Co., 296 Pa. 393; Joseph v. P. & W. Va. R. R. Co., 294 Pa. 315. She continued forward until the wheels of her automo

bile reached the second rail of the westbound track, when the train was first observed 50 feet away. The car was struck before the crossing was completed, and thrown back to the west side of the right-of-way.

Her claim to recover was based on the negligence of defendant in failing to give proper warning of the approach of the train. First, because of the failure of the crossing light to flash, a factor upon which she did not depend, as already noticed, and, second, for the reason that no whistle was blown or bell sounded. The burden was on plaintiff to prove the negligence causing the injury. A careful examination of all the evidence as to lack of signals, both that presented in the printed brief, and such as appears in the typewritten record, omitted from the former after notice, as provided by our rules of court, discloses all of it to be negative in character. Several witnesses testified they heard no whistle or bell, but none stated they were listening and would have known had the signal been given. As against this is the positive evidence of several witnesses for the defendant, who stated the whistle blew at the post 900 feet to the south, and that the automatic bell continued to ring from that point until the crossing was passed. The negative statements of the plaintiff must give way to the affirmative declarations of those, who were listening, in a position to hear: Zotter v. Lehigh Valley R. R. Co., supra; Craft v. Hines, 272 Pa. 499; Rapp v. Central R. R. of Pa., 269 Pa. 266; Urias v. P. R. R., 152 Pa. 326; Grimes v. P. R. R., 289 Pa. 320. From what has been said, it follows that the proof submitted to show lack of care by defendant was insufficient upon which to base a recovery, and judgment n. o. v. should for that reason have been entered in its favor.

It is therefore unnecessary to consider the question of the contributory negligence of the plaintiff as affecting the right to a verdict. An examination of all the evidence, however, clearly demonstrates that no judgment in her favor could have been sustained because of her

failure to exercise due diligence. When plaintiff approached the station from the west, her view to the south was limited by the station wall to 97 feet when she first stopped, but as she passed it, 12 feet west from the tracks, her line of vision was increased to 300 feet, according to her testimony, and to three-fourths of a mile, if the photographs and actual measurements be taken as true. Plainly, the oncoming train must have been observed before entering upon the first rail had the driver been attentive, and the car was struck, almost instantaneously, before the front wheels had reached the second one, less than five feet distant. "The fact that the accident happened as it did, indicates either that deceased failed to look and observe the approaching train, or, having seen it, decided to take the chances of an attempt to cross ahead of it. In either case, [she] was negligent and there can be no recovery for the unfortunate consequences thereof": Radziemenski v. B. & O. R. R., supra, p. 184; Zotter v. L. V. R. R. Co., supra; Haskins v. P. R. R., 293 Pa. 537; Rhodes v. P. R. R., 298 Pa. 101. "The fact that four or five seconds after [she] says [she] looked and listened [she] was struck by a train that must have been plainly visible, and almost upon [her] at the time [she] alleges [she] looked, is so palpably and absolutely irreconcilable with the truth of [her] statement that [she] did stop, look both ways, and listen, before driving upon the crossing, that it is trifling with justice to permit a jury to find that it is true. Such a finding is absurd. It is simply and flatly impossible that one can stop, look and listen for an approaching train that is in plain view and close at hand, and be unable to see or hear it, if [she] possesses the senses of sight and hearing": Myers v. B. & O. R. R. Co., 150 Pa. 386, 390.

The burden was on the plaintiff to show the negligence of the defendant, and in this she failed. Even had there been testimony justifying submission of this question to the jury, the contributory negligence appearing was

such as made necessary binding instructions for the defendant.

The judgment is reversed and here entered for defendant.