**ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a Corporation, Plaintiff in Error,**

v.

**Harold R. MESSMORE, Administrator of the Estate of A. Poyntz Haskins, Deceased, Defendant in Error.**

No. 37919.

Supreme Court of Oklahoma.

March 24, 1959.

Rehearing Denied May 26, 1959.

Rainey, Flynn & Anderson, Oklahoma City, for plaintiff in error.

Cargill, Cargill & Chaif, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

This action arose out of the death of A. Poyntz Haskins as a result of a collision between said decedent's automobile, which he was driving, and one of plaintiff in error's passenger trains at the place where a paved highway, commonly referred to as "Memorial Road" or "Memorial Boulevard", crosses plaintiff in error's railroad track, north of Oklahoma City. The accident occurred about 9:45 A.M., on July 27, 1956. In this action thereafter commenced by defendant in error, as administrator of said decedent's estate, said administrator, hereinafter referred to as plaintiff, sued to recover from plaintiff in error, hereinafter referred to as defendant, as damages for said death, the sum of $150,000 for the decedent's surviving widow, as the amount he would have contributed to her support had he lived, plus the sum of $2,500 as the expenses of his funeral and burial, and $2,500 as the reasonable value of his automobile, which was demolished in the accident.

In plaintiff's petition, defendant's alleged liability for Haskins' death was predicated on allegations to the effect that defendant's train struck his automobile and that said collision was caused by defendant's negligence in one or more, among others, of the following particulars: (1) The train approached the crossing at the excessive reckless and dangerous speed of 85 miles per hour; (2) without blowing its whistle or ringing its bell as provided by law; (3) and without warning of its approach by the automatic signals defendant had installed at said crossing. In referring to the latter warning device in paragraph VII of his petition, plaintiff alleged that the "electric light signal and flashing light was out of order, disconnected, and was not working at said time and place to warn the deceased herein of the approach of said train * * *". In its amended answer, the defendant specifically denied that its train struck the decedent's auto or that the automatic flasher signal lights guarding the crossing, were out of order, disconnected or in any way defective, or that it was negligent in any particular alleged by plaintiff, or any other. It affirmatively alleged, on the other hand, in substance, that it was free from actionable wrong in the premises and that the accident was caused by the negligence of the decedent in driving his auto into the train after it had entered the crossing.

According to the uncontradicted testimony of witnesses, both for plaintiff and defendant, the train was traveling between 80 and 87 miles per hour at the time of the collision. As against the positive and affirmative testimony of the train's engineer that, as it approached the crossing, he gave the regular whistle signals, two witnesses for plaintiff testified that they heard no sound from the train's whistle or bell.

There was a sharp conflict in the evidence as to whether the automatic signal lights at the crossing were operating at the time of the accident. Two witnesses for plaintiff testified positively that said lights were not operating, while the train conductor and engineer testified, just as positively, that said signal lights were operating. Defendant also introduced undisputed evidence that these signals were operating a few minutes after the accident, and its "signal maintainer" made the positive statement that the lights could not have been off, and related facts concerning their makeup and operation to support said statement. He also related facts in connection with his duties of inspecting and maintaining the signals in question, (and others in his maintenance district) contemplated to show that the defendant has left nothing to chance in seeing that they always operate.

At the trial, it was further shown that, at the time of his death, the decedent was fifty-eight years old and it was stipulated he had a life-expectancy of 15.77 years; but, on the issue of his widow's pecuniary loss by being deprived, through his death, of contributions he would have made to her support during said period, the evidence was in conflict. Mrs. Haskins first testified, on direct examination, that the decedent's average earnings during "the last ten years" of his life were $10,000 per year, but, on cross examination, she revealed that what she had reference to was his earnings as a representative for various ladies underwear and lingerie manufacturers and distributors in Texas, before the couple moved from Dallas to Oklahoma City, on September 15, 1955. She testified that, while living in Texas, she traveled with her husband ten years, and revealed that her estimate of his earnings, during that time, was arrived at merely "By the top lines * * *" he sold to department stores and the way they "were accepted" in such stores "and specialty stores." Mrs. Haskins further testified that the $10,000 figure she gave was gross income; and, when asked if her husband had to pay his expenses out of that, she replied: "Not all the time, no sir. Some firms paid his expenses." When asked how much of his $10,000 annual gross income the decedent contributed to her support, she simply replied: "I have no way of knowing." She further testified that she had been unable to find copies of her husband's income tax return for 1955, and no copies of any of his tax returns were introduced in evidence. It was shown that after the Haskins moved to Oklahoma City, Mr. Haskins commenced selling stock and insurance on a commission basis for Great Western Life Insurance Company, in the latter part of March, a little more than four months prior to his death. Mr. McDowell of that company, testified on behalf of defendant, that Haskins' commissions for said period had been only $1,027.64.

At the close of the evidence, the trial court overruled motions, on behalf of both plaintiff and defendant, for directed verdicts, and submitted the cause to the jury, which returned a verdict for plaintiff in the sum of $46,472. After judgment was rendered in accord therewith, and defendant's motion for a new trial was overruled, it perfected the present appeal.

In its first three propositions of error, defendant complains of various errors in the court's instructions and admission of evidence. Under its fourth, and last proposition, it also urges that there was no competent evidence to support a recovery against it nearly as large as the verdict and judgment, in that the evidence wholly failed to show what amount, if any, the decedent had contributed to Mrs. Haskins' support and to thus furnish a proper criterion as to her pecuniary loss by reason of his death. One of the instructions referred to was the trial court's tenth one, and read in part as follows:

"* * * It is shown by the evidence in this case, * * * that the defendant Railway Company has established and installed electric wig-wag alarm system crossing signals, and that the same has been equipped, installed and in use for several years prior to

the accident, injury and death involved in this action. The Court, therefore, instructs you that it was the duty and responsibility of the defendant Railway Company *to keep* said electric wig-wag signals at said crossing in working or operating condition so as to warn the public of the approach of its trains, and should you find from a preponderance of the evidence that the defendant *failed to keep* said crossing signals in proper working order and operation *at the time* and place in question that *would be negligence* on the part of the defendant * * *". (Emphasis ours.)

It is argued that the above-quoted instruction incorrectly told the jury that defendant was an insurer of the proper working and operation of the mechanical signal which plaintiff's evidence tended to show, as hereinbefore indicated, was not operating at the time of the accident. Defendant says its duty to keep it operating extended no further than exercising reasonable care to do so; and, before it could be found to have failed in this duty, it must appear—as was never shown in this case—that it knew, or reasonably should have known, that the device was not working. Expressions may be found in some of the authorities, which, at least by implication, support defendant's position. See, for instance, Vaca v. Southern Pac. Co., 91 Cal.App. 470, 267 P. 346, 347, Kingsbury v. Boston & M. R. R., 79 N.H. 203, 106 A. 642, Miller v. Pennsylvania R. Co., 299 Pa. 63, 149 A. 85, Southern Pac. Co. v. Kauffman, 9 Cir., 50 F.2d 159, Northern Pac. R. Co. v. Bacon, 9 Cir., 91 F.2d 173; 74 C.J.S. Railroads § 727, and cases cited in footnotes 20-25, both inclusive. It can be inferred from some of them that because a mechanical device may, on occasion, fail to operate without being the result of negligence on the part of its owner, such failure does not always constitute proof, in itself, of the owner's negligence. We do not quote these expressions, however, because some of them contain implications as to burden of proof and sufficiency of evidence that are unnecessary to

embrace herein. We think the proper rule is stated in Mallett v. Southern Pac. Co., 20 Cal.App.2d 500, 68 P.2d 281, 286, as follows:

"When railroad crossing signals are maintained by a company, even though the law does not require them to be installed, the public has a right to rely upon the exercise of reasonable care on the part of the railroad company, to keep them in good repair and in efficient working condition. (Citing authorities)."

In Midland Valley R. Co. v. Shores, 40 Okl. 75, 136 P. 157, 49 L.R.A.,N.S., 814 this court held:

"Where a railway company has established a practice of giving signals or keeping a flagman at a place frequently used as a crossing, and such practice is notorious, the traveler has the right to expect that the usual warning will be given, and the failure of the company to do so is a proper fact for the jury to consider in determining the question of the defendant's negligence."

Comparison of the above quotations with the trial court's Instruction No. 10, readily reveals their difference. In telling the jury, in substance, that the defendant's failure to have the crossing signal working at the time of the accident (if they found such fact) was negligence, instead of only evidence of it, that instruction obviated and/or pre-empted a determination by the jury as to whether the failure of the signals to operate was the result of any lack of care on the part of the defendant. In this connection, see paragraph 2 of the syllabus in Midland Valley R. Co. v. Pettie, 196 Okl. 52, 162 P.2d 543. Failure to use reasonable care is the foundation of all negligence, and a finding of such fact is a necessary prerequisite to tort liability, except in special cases such as those involving negligence per se. Plaintiff does not contend that, under our statutes, operational failure of signals at crossings like the one in question, renders defendant guilty of negli-

gence per se, or that defendant was an insurer of their operation, or that the instruction in question was not error. In view of the foregoing, we hold that it was error.

 In his Proposition II, plaintiff calls attention to the rule of appellate review that a verdict and judgment will not be reversed on account of error in one instruction, if the instructions as a whole fairly present the issues, and it appears from the record that said verdict and judgment are correct. Plaintiff's counsel fails to demonstrate, however, that the error in Instruction No. 10, was in any manner cured by any one, or group, of the other instructions. Nevertheless, under the harmless error doctrine in force in this jurisdiction, judgments are not usually reversed for errors in instructions, unless they result in prejudice to the objectant (Shultz v. Dillard, Okl., 262 P.2d 139; Threadgill v. Anderson, Okl., 303 P.2d 297), and one of the best tests for prejudice is the possibility of the verdict's having been different had the error not occurred. See Reinhart & Donovan Co. v. Williamson, 191 Okl. 539, 131 P.2d 765, 766–767; 3 Am. Jur., "Appeal and Error", secs. 1111, 1124. Where a verdict is amply supported by the evidence and, on the basis thereof, no other correct adjudication could have been made, there is usually no persuasive and practical reason for concluding that the losing party has been prejudiced by the alleged error. Where, however, the verdict is not warranted under any view of the evidence (St. Louis & S. F. R. Co. v. Model Laundry, 42 Okl. 501, 141 P. 970, 979), then it can only be concluded that it was the result of prejudice, mistake, confusion or misapprehension on the part of the jury. We think that is the only conclusion that can be reached here. Under no correct view of the evidence in this case can sufficient facts be found by which to measure the amount of the intestate's widow's loss by reason of his death. As hereinbefore pointed out, it not only failed to furnish a

criterion as to the intestate's net, as distinguished from his gross, earnings, but it wholly failed to establish to what extent his wife benefited from such earnings. In Magnolia Petroleum Co. v. Sutton, 208 Okl. 488, 257 P.2d 307, 316, we noted that damages in death actions in this State "are compensatory only", and we followed the rule that the "true measure" of a widow's loss from her deceased husband's death is that part of his income that he had customarily contributed to her wants and needs. Without any evidence as to such fact, such as is the situation here, we can only conclude that the jury's assessment of the plaintiff's damages was purely speculative, and excessive, in that it lacked sufficient evidence to support it, and was accordingly prejudicial to the defendant. In Railway Express Agency v. Stephens, 183 Okl. 615, 83 P.2d 858, 859, we held:

"Where the verdict clearly appears to be excessive as a result of an erroneous instruction duly excepted to as provided by section 360, O.S.1931, 12 Okl.St.Ann. § 578, the judgment based thereon will either be reversed and the cause remanded for a new trial or will be modified by this court and judgment rendered for the proper amount as reflected by the evidence."

 Since the error in the trial court's Instruction No. 10 was of such character as to logically and reasonably induce error in the jury's determination of defendant's liability, quite clearly its result was prejudicial to defendant, and the evidence of this case furnishes no sound basis for modification of the trial court's judgment, we have no alternative, under the applicable rules and precedents, except to vacate said judgment and direct the trial court to sustain defendant's motion for a new trial.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, IRWIN and BERRY, JJ., concur.

JACKSON, J., concurs in result.